AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>A SAMSUNG CELL PHONE AND AN HONOR CELLPHONE CURRENTLY LOCATED AT 135 TRIPPANY ROAD, MASSENA, NEW YORK 13662 | )<br>)<br>)   Case No.   8:24-MJ-302 (GLF)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii), (v) & (a)(2) | Alien transporting smuggling and conspiracy to commit alien transporting and smuggling |

The application is based on these facts:
Please see attached affidavit.

☐ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI TFO James J. Russell
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: July 2, 2024

*Judge's signature*

City and state:   Plattsburgh, NY

Hon. Gary L. Favro, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG CELL PHONE AND AN HONOR CELLPHONECURRENTLY LOCATED AT 135 TRIPPANY ROAD, MASSENA, NEW YORK 13662 | Case No.<br><br>8:24-MJ-302 (GLF) |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, James Russell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a Samsung cellphone and an Honor cellphone, which are currently in law enforcement possession, and the extraction from those properties of electronically stored information described in Attachment B.

2. I am employed as a Border Patrol Agent (BPA) with the United States Department of Homeland Security, Customs and Border Protection (CBP), Office of the United States Border Patrol. I am currently a Task Force Officer with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been a BPA since November 2008 and have received training in Drivers' Training, Physical Techniques, Firearms, and U.S. Law at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am currently assigned to the HSI Border Enforcement Security Taskforce (BEST) in Massena, New York as well as the Massena Border Patrol Station. From my experience as a BPA and that of agents with whom

I regularly work, I know that alien smuggling organizations utilize various forms of communication on electronic devices that may facilitate an illegal entry into the United States and other crimes facilitated by an illegal entry.

3.  I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325 and smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.  I make this affidavit based upon my personal knowledge and upon information received by me from other law enforcement officials. The statements of fact contained in this affidavit are based upon my personal knowledge, participation in the investigation, information provided by agents of the U.S. Border Patrol and other law enforcement agencies, analysis of documents, analysis of immigration databases, and my experience and training as a BPA. As a result of my participation in this investigation, I am fully familiar with the facts and circumstances of the investigation.

5.  I am submitting this affidavit in support of my application for a search warrant authorizing the search of the Devices (as described herein). I submit that probable cause exists to believe that the Devices contain electronically stored data, which will show evidence of alien smuggling, including methods and locations of smuggling routes, methods of payment for smuggling activities, and other instrumentalities of alien transporting and smuggling and conspiracy to commit alien transporting and smuggling in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v) & (a)(2).

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched are 1) a Samsung cell phone ("Device A"); and 2) an Honor cellphone ("Device B") (collectively the "Devices"). The Devices are currently located at 135 Trippany Road Massena, NY 13662.

8. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. On June 30, 2024, United States Border Patrol (USBP) agents assigned to the Massena station, were conducting roving patrol duties in the Fort Covington, NY area in conjunction with Burke Border Patrol (BKB), New York State Police (NYSP), and the Royal Canadian Mounted Police (RCMP) for Operation Red and Green. Operation Red and Green employs targeted enforcement in the USBP Burke, New York area of operation. This was a multi-agency, bi national, surge enforcement initiative. In recent months, the Fort Covington area has been heavily utilized by human smugglers and illegal non-citizens primarily due to its proximity to the United States/Canada International boundary.

10. At approximately 2:45 a.m., NYSP contacted Swanton Sector Radio communications and advised they conducted a vehicle stop on a 2022 Chevrolet Colorado bearing North Carolina license plate JMX 3777 on State Route 37 and Holden Road in Westville, NY. Agents in the area responded and were advised by NYSP Troopers that they observed the vehicle travelling northbound on State Route 37 and then returning southbound

onto State Route 37 from Mary Reilly Road in Fort Covington, NY. NYSP Troopers conducted a vehicle stop after witnessing the vehicle failing to signal from Mary Reilly Road onto State Route 37.

11. After speaking with the NYSP Troopers regarding the circumstances of the vehicle stop, U.S. Border Patrol agents questioned the driver and passenger as to their citizenship status. The female driver stated she was a naturalized United States citizen living in North Carolina. The passenger stated he was born in Guatemala and was illegally present in the United States after just crossing the United States-Canadian border near Fort Covington, NY. The driver was identified as Dinora GARCIA-ACEITUNO. GARCIA-ACEITUNO stated that she was in the area to pick up her boyfriend at a local farm. At that time, GARCIA-ACEITUNO claimed that the passenger was her boyfriend. Agents again questioned the passenger, identified as Walter PUTAL-CABNAL (PUTUL). PUTUL stated that he had crossed the border several hours ago by himself and was then picked up by GARCIA-ACEITUNO, who he had not previously known.

12. At approximately 3:17 a.m., GARCIA-ACEITUNO and PUTUL were placed under arrest for violating the INA. Both subjects were transported to the Massena Border Patrol Station for processing and interviews.

13. At the station, biographical information and fingerprints were entered into Department of Homeland Security databases for both subjects. Record checks confirmed information previously gathered in the field.

14. At the Massena Border Patrol Station, PUTUL was read his *Miranda* rights at 8:15 a.m. and agreed to make statements without the presence of legal counsel. In sum and substance, PUTUL stated that he arranged to be smuggled into the United States with the help

4

of an organizer. This organizer was to set up all travel arrangements for PUTUL on his journey into the United States from Canada. The organizer instructed PUTUL where to go, when to be there, who to meet with, who to pay, and what vehicles to enter. PUTUL stated that he paid a smuggler $1,500 Canadian up front to be smuggled from Canada into the United States. PUTUL was then supposed to pay an additional $2,000 USD after he was picked up in the United States via a phone application. PUTUL stated he had never met GARCIA-ACEITUNO prior to the event and was told to enter her vehicle by the organizer. PUTUL granted agents access to his cellphone and signed the appropriate form.

15.     GARCIA-ACEITUNO was read her *Miranda* rights at 9:57am and agreed to make statements without the presence of legal counsel. In sum and substance, GARCIA-ACEITUNO stated she was instructed by her "friend" to pick up someone near the border area. GARCIA-ACEITUNO stated she was provided the pick-up location and time by her "friend." GARCIA-ACEITUNO claimed she had not received any monetary compensation. GARCIA-ACEITUNO did not consent to a full search of her phones stating she had personal items on them she did not wish to be scene. However, GARCIA-ACEITUNO did wish to substantiate her story and agreed to show agents specific details on her phone. When GARCIA-ACEITUNO opened her phone, Device A, in plain view of agents, they observed a recent contact she had with someone whoose phone number, photo icon, and name which appeared to be the same as the organizer's contact information located in PUTUL's phone. When asked about that contact, GARCIA-ACEITUNO became defensive and attempted to shield her phone screen. Agents instructed her to place the phone on the table so she could not delete any data. GARCIA-ACEITUNO placed the phone on the table and no longer wished to provide access to the agents. GARCIA-ACEITUNO also had Device B in her

5

possession when she was arrested as well as a device that she claimed belongs to her husband that is not subject of this application.

16. PUTUL was charged for violating Title 8, United States Code, 1325(a)(2). GARCIA-ACEITUNO was charged for violating Title 8, United States Code, 1324 (a)(1)(A)(ii).

17. Through my training and experience, I am aware that smuggled aliens, such as PUTUL, and smugglers such as, GARCIA-ACEITUNO, commonly store names, phone numbers, and contact information for members of smuggling organizations on cellular phones and GPS devices, including, but not limited to information pertaining to the heads of the alien smuggling organization; the individuals involved in the alien smuggling organization; the individuals who transport the aliens; and the individuals who are responsible for the proceeds of alien smuggling. I am also aware that smuggled aliens commonly communicate on their cellular devices in furtherance of their own travels, including, but not limited to thorough real-time conversations regarding alien smuggling. I am aware that individuals involved in crossing the border illegally often use a cellular telephone's GPS functions to search for and map out potential crossing locations and individuals who pick illegal aliens up often utilize the GPS map function to find the aliens. I am aware that smugglers will use phones like the Devices to coordinate amongst themselves the movement of aliens and payment for smuggling.

18. The Devices are currently in the lawful possession of the United States Border Patrol at 135 Trippany Road Massena, NY 13662. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to

6

this investigation, in substantially the same state as they were when the Devices first came into the possession of U.S. Border Patrol.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include

various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna

can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    f.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

20.     Based on my training, experience, and research, I know that cellular phones typically have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

21.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

9

viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

24. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I respectfully submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Attested to by the affiant:

_____
James J. Russell
Task Force Officer
Homeland Security Investigations

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on July 2, 2024 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Gary L. Favro
United States Magistrate Judge

12

## ATTACHMENT A

The property to be searched are 1) a Samsung cell phone ("Device A"); and 2) an Honor cellphone ("Device B") (collectively the "Devices"). The Devices are currently located at 135 Trippany Road, Massena, NY 13662.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that contain evidence or instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(ii), (v) & (a)(2) (alien transporting smuggling and conspiracy to commit alien transporting and smuggling) that involve Dinora GARCIA-ACEITUNO and other co-conspirators, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls;

   b. Stored telephone and address directories;

   c. Direct connect and identification numbers;

   d. Pictures and videos;

   e. All audio recordings;

   f. All voice mail recordings;

   g. All location and GPS data;

   h. All instant messaging and related stored communications;

   i. All SMS messages and related stored communications; and

   j. Any other notations or electronic storage of any kind.

   k. Any information related to the facilitation of W. PUTUL's entry into the United States;

   l. All bank records, checks, credit card bills, account information, and other financial records.

2.Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a.Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.